IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RUBY NELSON COLLINSWORTH,
     Plaintiff,

vs.                           Case No.: 5:16cv346/LAC/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

On December 30, 2014, Plaintiff filed applications for DIB and SSI, and in both applications she alleged disability beginning July 1, 2011 (tr. 24).[1]  Her applications were denied initially and on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ").  A hearing was held on June 1, 2016, and on July 14, 2016, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 24–37).  On November 8, 2016, the Appeals Council denied Plaintiff's request for review (tr. 2).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.    FINDINGS OF THE ALJ

In his decision of July 14, 2016, the ALJ made the following findings relative to the issues raised in this appeal (tr. 24–37):

(1)    Plaintiff met the insured status requirements of the Act through March 31, 2015;

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on April 14, 2017 (ECF No. 10).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

(2)   Plaintiff did not engage in substantial gainful activity after July 1, 2011, the alleged onset date;

(3)   During the relevant period,[2] Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, facet syndrome L5-S1 status post fusion with foraminal stenosis, bilateral carpal tunnel syndrome, migraine, patella alta of the bilateral knees, and obesity;

(4)   Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(5)   Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[3] with certain limitations during the course of an eight-hour work day, namely, she could sit for 6 hours but would have to alternate to standing for 5 minutes after every 30 minutes of sitting; she could stand for 2 hours but would have to alternate to sitting for 10 minutes after every 10 minutes of standing; she could walk for 2 hours but would need to alternate to sitting for 10 minutes after every 10 minutes of walking; she could push and pull as much as she could lift and carry; she could frequently use bilateral hand controls; she could occasionally reach overhead bilaterally, and frequently handle and finger bilaterally; she could never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she

---

[2] In this case the relevant period for DIB purposes is July 1, 2011 (alleged onset date), through March 31, 2015 (date last insured).  For SSI purposes it is approximately December 2014 (application date), through July 14, 2016 (date of ALJ's decision).  *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

could occasionally be exposed to unprotected heights, moving mechanical parts, extreme cold, extreme heat, and vibration; and she would be limited to performing simple, routine tasks and making simple work-related decisions;

(6)    Plaintiff could not perform any past relevant work;

(7)    Plaintiff was born on February 15, 1971, and thus was 40 years old—a "younger individual," or one under the age of 50 (*see* 20 C.F.R. § 404.1563(c))—on the alleged disability onset date;

(8)    Plaintiff has at least a high school education and is able to communicate in English;

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills;

(10)    Considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could have performed during the relevant period;

(11)    Plaintiff therefore was not under a disability, as defined in the Act from July 1, 2011, through the date of the decision.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only

when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence.  42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the  evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates

against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).  Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at Step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    DISCUSSION AND INCORPORATED SUMMARY OF RELEVANT EVIDENCE

Plaintiff raises several issues in this appeal, which the undersigned has rearranged for organizational purposes.  Plaintiff first contends the ALJ's credibility determination is not supported by substantial evidence in the record as a whole.  Second, Plaintiff contends the ALJ erred in determining her RFC because the RFC does not include: (1) sufficient limitations regarding her difficulty with sitting or standing for more than a few minutes at a time and her carpal tunnel syndrome, or (2) any limitations related to her use of a cane.  Third, Plaintiff contends the ALJ erred in relying upon the testimony of the Vocational Expert ("VE") because the hypothetical questions he posed to the VE failed to include the various limitations just noted.

A.    Credibility Findings and Related RFC Findings Regarding Plaintiff's Ability to Sit/Stand and to Perform Activities Involving Gross or Fine Manipulation

When a claimant attempts to establish disability through her own testimony about her pain or other subjective symptoms, a two-part "pain standard" applies.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002); SSR 96–7p (July 2, 1996).  The pain standard requires the claimant to show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition

can reasonably be expected to give rise" to the claimed symptoms.  Wilson, 284 F.3d at 1225; *see also* 20 C.F.R. § 404.1529(a)–(b).

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.  20 C.F.R. § 404.1529(b)–(c).  At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by medical sources, and other evidence of how the pain affects the claimant's daily activities and ability to work.  *Id*. § 404.1529(c).  If the ALJ decides to discredit the claimant's testimony about her symptoms, the ALJ must adequately explain the reason for doing so.  Foote, 67 F.3d at 1561–62.  *See also* Wilson, 284 F.3d at 1225 (an ALJ may discredit a claimant's subjective testimony regarding pain or other symptoms or limitations, so long as the ALJ provides "explicit and adequate reasons for doing so"); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.  MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).  Where the ALJ makes no explicit finding, "the implication must be obvious to the reviewing court."  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote, 67 F.3d at 1562).  "The credibility

determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotation marks and citation omitted).

The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). An ALJ need not include in the RFC limitations, restrictions, or opinions he has properly rejected or that are otherwise unsupported by the record. *See* McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

Here, Plaintiff contends the ALJ erred in discounting her testimony regarding her inability to sit or stand for more than a few minutes at a time and her manipulative limitations and, correspondingly, erred by failing to include such limitations in her RFC. More specifically, Plaintiff contends the ALJ should have accepted as true all or most of her statements, including the following statements:

On a good day, [Plaintiff] can sit for 20 minutes before having to stand and walk around "trying to get the feeling back in my legs and . . . get the ache out of my back," and stand five minutes. (Tr. 64). However, on a bad day, she is "two minutes down, two minutes up. . . . I lay down. That brings me relief." (Tr. 64). Her ability to stand and walk varied depending on her knee pain, but if she had to stand on both legs, "probably 10 minutes" and would have to sit "[m]aybe five minutes, 10 minutes. I don't really know" before getting back up again. (Tr. 66). If given the opportunity to alternate between sitting and standing, Ms. Collinsworth testified that she could sit down for a total of "[m]aybe three hours sitting. I'm not sure." (Tr. 64–65).

Ms. Collinsworth testified that the carpal tunnel symptoms were more noticeable on the right because she was right-hand dominant, and the symptoms were worsening such that her right hand was numb. (Tr. 67). She can hold a jar, but had difficulty opening lids, applying pressure, or holding onto and picking up objects. (Tr. 67–68). Instead of picking up paper clips, she "would like swipe it to fall in my hand. It's easier to do that than to pick it up" and had done so "going on probably four years" and at least since 2012, although it was worse at the time of the hearing. (Tr. 68–69). Ms. Collinsworth testified that the severity of the symptoms depended on the day. (Tr. 68). She also had difficulty reaching above her head with both arms. (Tr. 69). Finally, Ms. Collinsworth testified that she could . . . lift a gallon of milk, but not every day or on a bad day. (Tr. 79).

(ECF No. 14 at 17–18).

In evaluating Plaintiff's credibility, the ALJ noted that he "considered all symptoms and the extent to which [they could] reasonably be accepted as consistent with the objective medical evidence and other evidence," pursuant to 20 C.F.R. § 404.1529 (tr. 29). He also acknowledged that he was required to follow the two-step process in evaluating Plaintiff's complaints of pain and other symptoms (*see id.*).

Then, after considering the evidence of record, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms *but not to the extent alleged by Plaintiff* as to their intensity, persistence, and limiting effects (tr. 30).

Correspondingly, in determining Plaintiff's RFC, the ALJ accepted that Plaintiff in fact had some limits with respect to her ability to stand, walk, or sit, and some upper-extremity limits related to her carpal tunnel syndrome ("CTS"), and he incorporated such limits in the RFC, as follows.[5]

Initially, the ALJ limited Plaintiff to sedentary work, which involves lifting no more than ten pounds at a time, and he limited pushing and pulling to the same amount Plaintiff could lift and carry (i.e., ten pounds). He also assessed the following limitations regarding sitting, standing, walking, and use of the upper extremities:

> [Plaintiff] can sit for six hours of an eight-hour workday, but requires the need to alternate to standing for five minutes after every 30 minutes of sitting. She can stand for two hours of an eight-hour workday, but requires the need to alternate to sitting for 10 minutes after every 10 minutes of standing. She can walk for two hours of an eight-hour workday, but requires the need to alternate to sitting for 10 minutes after every 10 minutes of walking. . . . She can frequently use bilateral hand controls. She can occasionally reach overhead bilaterally, and frequently handle and finger bilaterally.

(tr. 29).

_____

[5] As discussed more fully below, the ALJ did <u>not</u> find that Plaintiff needed a cane for ambulation, and thus he included no limitations related to the use of a cane in Plaintiff's RFC.

In support of his credibility determinations and related RFC findings, the ALJ first stated that Plaintiff's symptoms, to the extent she alleges, are not consistent with the medical evidence of record (tr. 30). The ALJ then summarized the relevant medical evidence, including evidence from Ayman Aboulela, M.D., who examined Plaintiff on January 2, 2013 (tr. 382). As the ALJ noted, Plaintiff advised Dr. Aboulela that she could walk up to thirty minutes (tr. 32; *see also* tr. 382). Additionally, upon examination, Dr. Aboulela observed that other than the lumbar spine, Plaintiff had full range of motion in all areas tested, including her extremities; that she could squat, albeit with difficulty; and that she had no deformities in her extremities (tr. 382). Dr. Aboulela found straight leg raising tests to be positive at 90 degrees (*id*.). There is no indication in Dr. Aboulela's record that Plaintiff presented with a cane, was otherwise using a cane at that time, or that a cane was necessary (*see id.*).

Next, the ALJ pointed to a physical examination by Jack B. Shumate, M.D., in June of 2013, during which Plaintiff had no difficulty "getting on her heels and toes" and could briefly stand on one foot alone (tr. 30). The ALJ acknowledged Dr. Shumate's observation that Plaintiff's gait was antalgic and that she had trouble standing erect without back support (*id*.). As with Dr. Aboulela's record, there is no

indication in Dr. Shumate's record that Plaintiff presented with a cane, was using a cane at that time, or that a cane was necessary (*see* tr. 386–88).

Continuing, the ALJ referenced Plaintiff's follow-up visit with Dr. Shumate in August of 2013, during which a nerve conduction velocity electromyography test "(NCV/EMG")" revealed "*borderline* right carpal tunnel syndrome" (tr. 31) (emphasis added), but otherwise was unremarkable (tr. 384). Additionally, on strength testing Plaintiff "graded 4/5 or better" on multiple tests, including wrist flexion/extension, hand grip, ulnar intrinsic function, thenar muscle function, elbow flexion/extension, and shoulder abduction and external rotation, as well as hip flexion, knee flexion/extension, foot dorsiflexion, foot plantar flexion, "EDB" (believed to be extensor digitorum brevis, a muscle in the foot) function, and neck flexion/extension (tr. 31). Dr. Shumate further reported that "[t]endon reflexes were 2+ and symmetric biceps, triceps, knees and ankles" (*id*.). As with Plaintiff's previous visit with Dr. Shumate in June 2013, Plaintiff was able to "get[] on [her] heels and toes without difficulty" and stand on one foot alone; Romberg test was negative (tr. 384). Plaintiff was also able to "stand from sitting and step onto a stool without any assistance," and sensation was intact to "hot/cold, pinprick, [and] vibratory sensation" in the hands and feet, as it was in June 2013 (tr. 384, 387). Again, there is no indication in the record

that Plaintiff presented with a cane, was using a cane at that time, or that a cane was necessary (*see* tr. 384–85).

A physical examination conducted on November 25, 2013, by Cyril C. DeSilva, M.S., M.D., a neurosurgeon, showed that Plaintiff's extremities were "unremarkable," and a review of Plaintiff's musculoskeletal system was "negative," even though Plaintiff appeared for the appointment using a cane (*see* tr. 403).

An examination in January of 2014 by Michael C. Noble, M.D., was similar to the one conducted by Dr. DeSilva, and Plaintiff again appeared for the appointment with a cane (tr. 426). She complained of low back pain but made no mention of CTS or any related symptoms, although Dr. Noble noted that an NCV/EMG study in July was normal other than "*mild* right CTS" (*see* tr. 424) (emphasis added). Dr. Noble also noted that none of the following were present in the musculoskeletal system: claudication, joint pain, joint swelling, leg weakness, muscle weakness, or myalgia (tr. 425). Plaintiff's knees were straight, level, and normal, and her ankles and feet were normal (tr. 426). Strength was "5/5" in all sixteen areas that were tested, including hip flexion, knee extension, and knee flexion, bilaterally; additionally, sensation to light touch was normal in all fourteen areas tested, bilaterally (*see id*.). Straight leg raising tests were negative, as was a "bilateral leg standing toe raise" (*id*.). Dr. Noble did note Plaintiff's complaint of back pain, as well as positive Trendelenburg Tests, bilaterally,

and abnormal elevation of the posteriour superior iliac spine with hip flexion, but otherwise the examination was largely unremarkable (*see* tr. 426).[6]  Plaintiff returned to Dr. Noble in June 2014, with a primary complaint of knee pain and no reports of back pain (*see* tr. 432–33).  An examination of the knees revealed some tenderness in the right knee and crepitus in both knees, but the remainder of the examination was essentially unremarkable (*see* tr. 434).  Dr. Noble assessed moderate patella alta in both knees and recommended rehabilitation exercises (tr. 435).  There is no indication that Plaintiff presented with a cane (*see* tr. 432–35), and Dr. Noble did not recommend that Plaintiff use a cane (*see* tr. 435).  When Plaintiff returned to Dr. Noble in September of 2014, she reported "feeling well with no complaints" (tr. 428).  She advised Dr. Noble she had been "exercis[ing] (stretching)" seven days per week (*id*.).  A physical examination was essentially unremarkable, though it does not appear to have been as thorough as the one Dr. Noble did in January of 2014 (*see* tr. 429–30).  Plaintiff did not present with a cane and none was prescribed or recommended (*see* tr. 428–31).

The ALJ went on to discuss x-rays or MRIs which documented some possible disc disease at C4-5 and C5-6, limited flexion with slight subluxation at C3-4, and

---

[6] In support of his credibility findings the ALJ referenced the November 2013 and January 2014 evaluations by Dr. DeSilva and Dr. Noble, respectively, though he did not summarize their findings in as much detail as the undersigned has in this Report (*see* tr. 31).

small posterior disc protrusion at C5-6, as well as patella alta in the knees, bilaterally, and mild sacroiliac ("SI") joint sclerosis (tr. 31). The ALJ also noted that Plaintiff had been assessed with lumbar degenerative disc disease with facet arthrosis at L4-5, and was status-post fusion at L5-S1 (tr. 32).[7]

Continuing, the ALJ noted the results of consultative examinations, including ones conducted by Michael Reed, M.D., in December of 2014, and by Osama Elshazly, M.D., in March of 2015 (tr. 32).

Dr. Reed's examination revealed some pain and tenderness in the low lumbar spine, with limits in extension and rotation, though Plaintiff was able to squat and stand on her heels and toes (tr. 460). Plaintiff's gait was "slow and shuffling" (*id*.). Plaintiff was able to move from a standing position to a sitting position without difficulty, sit without support, and move from a sitting position to a supine position without difficulty (tr. 460, 464, 465). Hip motions were normal, as was sensation in both legs, although straight leg raising was restricted, bilaterally, due to Plaintiff's complaints of pain (tr. 460, 464, 466). Plaintiff advised Dr. Reed that she used a cane (*see* tr. 458), although it is unclear whether she brought one to the examination (*see* tr. 458–61). Either way, it does not appear that she used a cane during the examination (*see* tr. 460–61; *see also* tr. 462, ¶155), and ultimately none was

---

[7] Based in part on the MRI and x-ray results, the ALJ found Plaintiff's knee and back conditions to be severe impairments.

recommended (tr. 461). Dr. Reed did not offer an opinion as to Plaintiff's physical abilities or limitations (*see* tr. 458–61). Nevertheless, the ALJ attributed some weight to his findings and specifically incorporated the "sit/stand" option into Plaintiff's RFC in light of Dr. Reed's observation that Plaintiff "sits shifting and has a slow, shuffling gait" (tr. 32).[8]

Dr. Elshazly's examination in March 2015 revealed full range of motion in the cervical spine, shoulders, elbows, wrists, hands, hips, knees, ankles, and toes (469–71). The only decreased range of motion noted was in the lumbar spine (tr. 469). Examination of the neck revealed that it was mobile and normal, except for some tenderness over the cervical spine; Plaintiff's gait was unsteady; she was "able to do squat, toe walking, and heel walking but with great difficulty after [Dr. Elshazly] helped her; her grip strength and fine manipulation were "3/5" in the right hand and "4/5" in the left hand, with decreased sensation on the thenar eminence on the right and a positive Tinel's sign, which suggested CTS; and there was decreased sensation on the right lower extremity on the right side (tr. 473). While Plaintiff advised Dr. Elshazly that she "use[s] a cane for walking" (*id.*), it does not appear that she used one during the examination (*see* tr. 472–74), and none was recommended (tr. 474). Dr.

---

[8] The ALJ also acknowledged Dr. Reed's opinion rendered about four months later, in April of 2015, that Plaintiff was an excellent candidate for carpal tunnel release (tr. 32; *see also* tr. 480). The ALJ then stated that "the limitations in the [RFC as to] reaching, handling and fingering accommodate for the . . . carpal tunnel syndrome" (tr. 32).

Elshazly opined that the whole of Plaintiff's medical problems "could interfere with her daily activities," though he noted that a review of all of her medical records—to include any MRI results—would be helpful and, of course, that the disability determination was not up to him (*see id*.).  The ALJ detailed Dr. Elshazly's findings and then assigned "partial weight to his opinion" and "great weight to [his] physical findings and his finding that [Plaintiff's] impairments could impact her daily activities, as well as his observations in his examination to the extent that they are consistent with [Plaintiff's RFC]" (tr. 32–33).

Next, the ALJ pointed to the opinions of Thomas Bixler, M.D., a non-examining agency consultant, rendered on June 19, 2015.  After conducting a thorough review of the record, Dr. Bixler opined that Plaintiff was capable of performing sedentary work with various postural limitations, exertional limitations, manipulative limitations, and environmental limitations—opinions to which the ALJ assigned great weight, as he found them to be consistent with the record as a whole and supported by relevant evidence (tr. 34; *see also* 161–162).  As a result, the RFC determined by the ALJ largely tracks the opinions of Dr. Bixler, and where it does not track them it is more restrictive.  For example, Dr. Bixler opined that Plaintiff could stand and/or walk "with normal breaks" for two hours and sit for six hours "with normal breaks," but the ALJ found that Plaintiff would need to sit for ten minutes after

every ten minutes of standing or walking and stand for five minutes after every thirty minutes of sitting.  Dr. Bixler also opined that Plaintiff's ability to reach in any direction was "unlimited," but the ALJ limited Plaintiff to occasional reaching overhead.  Lastly, although Dr. Bixler limited Plaintiff to "frequent" handling and fingering only on the right (*see* tr. 162, Dr. Bixler's opinion, permitting "constant" manipulation with the left hand), the ALJ imposed this restriction bilaterally.[9]

Based on all of the foregoing, the undersigned concludes that the ALJ properly evaluated Plaintiff's credibility and, correspondingly, properly determined her RFC.

More particularly, it is clear that the RFC adequately accounts for any (credible) difficulties Plaintiff has with sitting, standing, or walking, including those observed by examining physicians (e.g., antalgic gait, "shuffling" gait), especially in light of Plaintiff's own report to Dr. Aboulela—made just a few months before Dr. Shumate noted the antalgic gait—that she could walk up to thirty minutes at a time.  Likewise, the limitation to sitting no more than a half-hour, after which Plaintiff must be permitted to stand for five minutes, adequately accounts for Dr. Reed's observation that Plaintiff "sits shifting."  And more generally, the RFC is consistent with the many

---

[9] It also appears the ALJ viewed Plaintiff's ability to perform certain daily activities as inconsistent with the disabling limitations she alleged (*see* tr. 30).  Although the ALJ referenced these activities specifically in concluding that Plaintiff had no severe *mental* impairment, the parties seem to agree that he also considered these activities in making his overall findings about Plaintiff's credibility and physical ability to work (*see* ECF No. 14 at 31–32; ECF No. 15 at 10–11).

unremarkable or normal findings upon examination, including full ranges of motion; the ability to stand on heels and toes, to squat, and to step up onto a stool without any assistance; symmetric reflexes; intact sensation; full strength with hip flexion, knee extension, and knee flexion; and no leg or muscle weakness.

The RFC also sufficiently accounts for limitations related to Plaintiff's CTS. It is important to note, as the ALJ did, that various physical examinations revealed full grip strength and/or normal ranges of motion in the shoulders, elbows, wrists, and hands, as well as diagnoses of *borderline* or *mild* CTS, at least initially.  While the evidence of record shows some worsening of Plaintiff's CTS over time, Dr. Bixler specifically noted that he considered this evidence in formulating his opinions (*see, e.g.*, tr. 163 (Dr. Bixler's noting that he reviewed Dr. Elshazly's record of Plaintiff's examination in March 2015, during which a positive Tinel's sign was found, as was reduced sensation on the right and reduced grip strength ("3/5" and "4/5") on the right and left, respectively)).  Dr. Bixler nevertheless opined that Plaintiff could perform sedentary work with various restrictions, including those related to the upper extremities.  The ALJ committed no error in relying upon the opinions of Dr. Bixler, as it is clear that Dr. Bixler considered the record as a whole in formulating his opinions, and the record supports his opinions. *See* Banks for Hunter v. Comm'r, Soc. Sec. Admin., 686 F. App'x 706, 710 (11th Cir. 2017) ("State agency medical

consultants are highly qualified and considered experts in Social Security disability evaluation. . . .  The regulations require an ALJ to consider findings and opinions of State agency medical consultants as opinion evidence, except for the ultimate determination about whether a claimant is disabled.") (citing 20 C.F.R. § 416.927(e)(2)(i)).

### 1.    Sub-claims Related to the ALJ's Credibility and RFC Findings

Plaintiff complains that the ALJ erred by noting Dr. Reed's opinions in 2015 that Plaintiff was an excellent candidate for carpal tunnel release and that her right hand was worse than her left (*see* tr. 32), but omitting mention of the whole of his records, including the results of diagnostic tests that were indicative of CTS and his statement that Plaintiff's CTS was "more of a disability than a nuisance" (*se*e tr. 480; ECF No. 14 at 23–24).  The court finds no error, as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in the decision," so long as the decision enables a reviewing court to determine whether the ALJ considered the claimant's medical condition as a whole.  Dyer, 395 F.3d at 1211 (citing Foote, 67 F.3d at 1562).  Here, it is evident that the ALJ considered Plaintiff's condition as a whole, including the records from Dr. Reed at issue, given that he specifically mentioned them in his opinion.  Moreover, while Dr. Reed did opine that Plaintiff's CTS was "more of a disability than a nuisance" (tr. 480) as Plaintiff states, in the same

month (April 2015) Dr. Reed reported "brisk and symmetrical reflexes" and a motor examination that resulted in a "5/5" (tr. 481). Furthermore, as this court is well aware, an opinion of "disability"—to the extent Dr. Reed's statement can be construed as such—is not binding on the Commissioner. *See, e.g.*, 20 C.F.R. § 404.1527(d)(1) (a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion); SSR 96-5p (July 2, 1996) (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").

Plaintiff additionally takes issue with the ALJ's statement that he assigned "partial weight" to Dr. Elshazly's opinion and "great weight to Dr. Elshazly's physical findings and his finding that [Plaintiff's] impairments could impact her daily activities, as well as his observations in his examination . . . ." Plaintiff contends if the ALJ indeed assigned great weight to Dr. Elshazly's findings, then it was error to include in the RFC "frequent" use of the hands and fingers (*see* ECF No. 14 at 23). The court finds no error, for two reasons. First, the ALJ qualified the foregoing statement by noting that he assigned great weight to Dr. Elshazly's findings to the extent that they are consistent with Plaintiff's RFC. Second, the RFC includes manipulative restrictions that are generally consistent with Dr. Elshazly's findings,

given that Dr. Elshazly found absolutely no limits in range of motion in both of Plaintiff's upper extremities, to include her wrists and hands. Dr. Elshazly did record reduced grip strength, which the ALJ acknowledged (as did Dr. Bixler), and restricted the RFC accordingly (as did Dr. Bixler). What is more, the manipulative and other restrictions set forth in the RFC can easily be viewed as restrictions that would impact Plaintiff's daily activities, as Dr. Elshazly opined. For all of these reasons, the court finds no error.[10]

In conclusion, the court notes that Plaintiff largely points to her own testimony to demonstrate that she in fact has disabling limitations. Plaintiff's own subjective complaints, however, are insufficient. *See* 42 U.S.C. § 423(d)(5)(A) (subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of

---

[10] Even if the ALJ erred in not further restricting the use of Plaintiff right hand, the error is harmless. The ALJ asked the VE whether a hypothetical individual with Plaintiff's RFC could perform available work, and the VE identified three jobs: order clerk, charge account clerk, and surveillance system monitor (tr. 87). The ALJ then asked the VE to assume that the same person was restricted to only occasional use of the right (dominant) hand for hand controls, handling, and fingering (tr. 87–88). The VE opined that such a person could still perform the surveillance system monitor position, and that 3,100 such jobs existed in the regional economy and 85,000 in the national economy (tr. 87–88). The record establishes that, at a minimum, Plaintiff could occasionally use her right hand (*see, e.g.*, tr. 161, defining occasional use as use during *no more than* one-third of an eight-hour workday) and thus could perform at least one available job. *See, e.g.*, Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 1981) (reversal and remand based on disregard of a social security ruling may occur only when the plaintiff also shows that prejudice arose from that error); Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure . . . ."); *see also* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in *one* or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.") (emphasis added).

disability"). The ALJ properly evaluated Plaintiff's credibility, properly determined that her symptoms were not as severe as she alleged, and properly determined her RFC. Furthermore, as previously noted, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence, Sewell, 792 F.2d at 1067 (11th Cir. 1986), and this court may not substitute its judgment for that of the Commissioner, Martin, 894 F.2d at 1529. The question is whether substantial evidence in the record as a whole supports the ALJ's findings. Here, it does.

> B.    Plaintiff's Use of a Cane

The ALJ found that Plaintiff did not need to use a cane during the relevant period and that it had been prescribed only prior to the relevant period, during Plaintiff's lumbar recovery (see tr. 32). Thus, the ALJ did not include in Plaintiff's RFC any restrictions related to the use of a cane (id.). Plaintiff contends the ALJ erred in this regard because "the evidence of record demonstrates the medical need for a cane" (see ECF No. 14 at 25–26). In support, Plaintiff recites the findings upon examinations, detailed supra, that showed any deficiencies in Plaintiff's ability to stand or walk, as well as notations in the record showing that at various time Plaintiff appeared for doctors' appointments or examinations using a cane (see id. at 27–30).

The record in fact contains no prescription for a cane during the relevant period. Moreover, Plaintiff acknowledged that the cane had been prescribed back at the time of her L5-S1 fusion surgery, as the ALJ noted (*see* tr. 30, 63). Plaintiff now contends that no prescription was necessary because she already had a cane. However, the record does not show that Plaintiff appeared at *every* doctor's appointment using a cane or that any doctor recommended that she use a cane during the relevant period, whether or not she presented with a cane. At most, physicians simply commented, when applicable, that Plaintiff presented with a cane for her appointment. *Plaintiff's* decision to use a cane during the relevant period does not compel a finding that a cane was medically necessary, nor do the deficiencies noted upon examination or Plaintiff's testimony that she needed a cane. As discussed thoroughly in the preceding section of this Report, the ALJ properly found Plaintiff less than fully credible, and his findings in that regard are well supported by the record. Thus, the ALJ did not err in concluding, as did Dr. Bixler, that a cane was not medically necessary, despite Plaintiff's statements to the contrary.

C.    Testimony of the Vocational Expert

Plaintiff contends the ALJ erred in relying upon the testimony of the VE because the hypothetical questions he posed to the VE failed to include various

limitations she contends existed during the relevant period (e.g., relating to her CTS, standing/walking/sitting abilities, and/or use of a cane).

A hypothetical question must comprehensively describe the plaintiff's condition, and VE testimony that does not accurately address that condition cannot be considered substantial record evidence.   Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).   However, the ALJ is not required to include findings in the hypothetical that he has properly rejected as unsupported.  *See* McSwain, 814 F.2d at 620 n.1.

Here, because the ALJ properly rejected Plaintiff's subjective complaints to the extent alleged, he did not err in failing to include in his hypothetical questions limitations that are inconsistent with the RFC.

V.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be

**DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 16<u>th</u> day of February 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.